**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0219n.06
Filed: March 28, 2005

**No. 04-5228**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| KATIE D. HALL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| EASTMAN CHEMICAL COMPANY, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

Before**: SILER, COLE, and CLAY, Circuit Judges.**

**SILER**, Circuit Judge. Plaintiff Katie D. Hall appeals the grant of summary judgment to defendant Eastman Chemical Company ("Eastman"). She argues that the district court erred in denying her claim for discrimination under the Americans with Disabilities Act ("ADA") and her claim for retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. For the following reasons, we **AFFIRM** in part and **REVERSE** and **REMAND** in part.

**I.**

Hall worked for Eastman as a baler technician ("baler"). Her primary job was to cut bales of product at designated times. Hall was also responsible for working as a "tow feeder helper," and

she received some training on tow feeder machines.[1]  In March 1999, an Employee Performance Assessment noted she had a "pattern of excessive time off" which needed improvement.  Three days later, she received a personnel report stating that she had mis-identified a bale.  In July 1999, she was put on a development and coaching plan and was warned not to have any more absences.  In 2000, her position was outsourced, but all balers were encouraged apply for a higher position.  Hall took and passed the required test.  However, when a supervisor reviewed her file, he was alarmed at Hall's absences and placed her on Awareness Warning, the first level of progressive discipline.

Hall then complained that she had been sexually harassed between 1996 and 1998 by a customer who made periodic visits to the plant.  She also complained about a single incident of harassment by a former supervisor in 1999.  An initial investigation uncovered no wrongdoing; however, after Hall disclosed incriminating audio tapes, Eastman performed a second investigation which confirmed her allegations.  Hall was assured that the company would correct the problem.

In January 2001, Hall failed to cut three bales of product on time, and she was placed on Final Warning.  A few months later, she was allegedly threatened by a co-worker, suffered a panic attack, and needed to take medical leave.  Upon her return, a company physician noted that Hall might be a danger to others, so Eastman assigned her a painting job she could do alone.  Shortly thereafter, she obtained a note from her own psychiatrist clearing her of all work restrictions.

---

[1]This parties dispute how much training Hall received on the tow feeder machines.  The record indicates that Hall was certified to operate only Autefa tow machines, which she claims are different from conventional tow feeders.  In her Second Declaration, she stated that she only received training on the Autefa tow feeders and was never trained on the conventional tow feeders.

In June 2001, Hall was assigned to work on the tow feeder floor which utilized conventional, not Autefa, tow feeders. She had difficulty in this new position and needed significant help from coworkers because she could not troubleshoot or fix broken machines. Because of these problems, a disciplinary board recommended her dismissal. This board invited Hall to submit a written statement but did not allow her to present witnesses on her behalf. The board terminated Hall, in part, because of a defective bale that was allegedly delivered to a customer and returned to Eastman. Hall contends that Eastman did not follow company policy and open the defective bale in front of her, but instead claimed it was hers and put that information into her work record.

In April 2002, approximately 297 days after her termination, Hall filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), but not directly with the Tennessee Human Rights Commission ("THRC").[2] She subsequently filed her complaint in district court. Eastman moved for summary judgment, which the district court granted in its entirety.

## II.

We review the district court's grant of summary judgment *de novo*. *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004). Summary judgment is appropriate when "there is no genuine issue

---

[2]Tennessee law allows an employee to seek relief for a discrimination claim in one of two ways: 1) by filing an administrative claim with the THRC within 180 days of the alleged discriminatory act, or 2) by filing a direct action in chancery court. Initially, Hall filed an action in chancery court, but she later dismissed the action voluntarily. When she filed her claim with the EEOC 297 days after her termination, she checked the box stating that she wanted her charge filed with both the EEOC and the THRC.

No. 04-5228
Hall v. Eastman Chemical Co.

as to any material fact," and the non-moving party is entitled to "judgment as a matter of law." Fed. R. Civ. P. 56(c).

Eastman first claims that Hall's complaints are untimely because they were not filed within the 180-day deadline. 42 U.S.C. §§ 2000e-5(e)(1) & 12117(a). However, the statute has a 300-day extended deadline for claimants who have "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." Hall claims that her complaint to the EEOC constituted a "dual filing" with both the EEOC and the THRC. We agree and find that Hall's complaint was timely filed, as the district court apparently did, and we will address the merits of her claims.

**Hall's Claim Under the ADA**

To state a *prima facie* case under the ADA, Hall must first establish that she is an "individual with a disability." *Cotter v. Ajilon Services*, 287 F.3d 593, 598 (6th Cir. 2002). The ADA defines "disabled" as someone who has an "impairment that substantially limits one or more of [her] major life activities," or is a person "regarded as having such an impairment." 42 U.S.C. § 12102(2) (A) & (C). Hall only claims that she was "regarded as" disabled. Because "regarded as" cases rest "almost entirely in the employer's subjective state of mind," proving that the employee is "regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001).

The EEOC defines "substantially limits" as being significantly "restricted as to the conduction, manner, or duration under which an individual can perform a major life activity." 29 C.F.R. § 1630.2(j)(1). "Merely having an impairment does not make one disabled for purposes of

the ADA. Claimants also need to demonstrate that the impairment limits a major life activity."

*Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 195 (2002). The plaintiff must show that

she cannot perform tasks that are "central to daily life." *Id.* at 197. Furthermore, she must show that

she is precluded from more than just a "single job." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471,

492-93 (1999).

Hall claims that Eastman regarded her as disabled based on the following evidence: 1)

managers knew she was sick and told her to see her psychiatrist; 2) the company physician stated

that Hall was a danger to others; and 3) she worked solitary jobs until she was cleared of all

restrictions. These facts are clearly insufficient to show that Eastman regarded her as disabled for

the purposes of the ADA. None of this evidence proves that Eastman believed Hall was

"substantially limited" from performing major life activities, including working. Even after the

company physician noted that Hall was a danger to others, Eastman still found work for her to do.

Because Hall cannot show that Eastman regarded her as disabled, she cannot show a *prima facie*

case and her claim must fail.

**Hall's Claim Under Title VII**

To state a *prima facie* case of retaliation, Hall must prove that: 1) she engaged in protected

conduct; 2) Eastman knew that Hall's complaints were protected; 3) Eastman took an adverse

employment action against her after she engaging in the protected activity; and 4) there was a causal

connection between the protected activity and the adverse employment action. *See Ford v. General

Motors Corp.*, 305 F.3d 545, 552-53 (6th Cir. 2002). The only issue on appeal is causation. The

district court determined that Hall could not prove causation, *inter alia*, because more than nine months had passed between her complaints of harassment and her termination.

If a lengthy period of time elapses between the plaintiff's complaint and her adverse employment action, the inference of causation is weakened. *See, e.g.*, *Clark County Sch. Dist. v. Breeder*, 532 U.S. 268, 273 (2001) (finding that twenty months was too long to support an inference of causation). Additionally, we have held that temporal proximity alone is insufficient to establish causation; the plaintiff must also bring forth other evidence of causation. *See Little v. B.P. Exploration & Oil Co.*, 265 F.3d 357, 364 (6th Cir. 2001). *But see Moon v. Transp. Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir. 1987) (suggesting that temporal evidence may be sufficient in cases where there is no evidence of other reasons for termination–however, since Eastman has alleged alternative reasons for termination, this is not the case here). Hall contends that she did bring forth evidence of causation including evidence that Eastman "set her up to fail"; that the company initially determined that her allegations of sexual harassment were untrue; that Eastman did not allow Hall to present witnesses at her termination meeting; and that Eastman did not follow proper procedures when it claimed that Hall had shipped a defective bale to a customer.

Evidence of being "set up to fail" can be used to show causation. In *Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir. 1997), the Third Circuit determined that, although the plaintiff was terminated more than two years after he engaged in protected conduct, he still brought forth sufficient evidence that he was "set up to fail" by being placed in a struggling department and ranking his performance under a system described as a "sham." *Id.* at 921-23. Hall, too, has presented evidence of being "set up to fail" because she was allegedly assigned a job without proper

training.  This evidence, combined with the evidence stated above is sufficient to set forth a *prima facie* case of retaliation.

Because the district court did not reach the issue of pretext, we **REVERSE** and **REMAND** this case to the district court to proceed with the Title VII retaliation analysis.  However, we **AFFIRM** the district court's ruling on the issue of disability discrimination.